**STATE of Maine**

**v.**

**Samantha GLENNER a/k/a Glen Robert Askeborn.**

Supreme Judicial Court of Maine.

Argued June 13, 1986.

Decided Aug. 18, 1986.

---

James E. Tierney, Atty. Gen., Charles K. Leadbetter, Wayne S. Moss (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Silsby & Silsby, Sandra Hylander Collier (orally), Anthony W. Beardsley, Ellsworth, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, GLASSMAN and SCOLNIK, JJ.

ROBERTS, Justice.

Samantha Glenner, also known as Glen Robert Askeborn, appeals from his conviction of murder, 17–A M.R.S.A. § 201(1)(A) (1983), entered after a jury-waived trial in Superior Court, Hancock County. In addition to his challenge to the sufficiency of the evidence, Glenner claims the trial court erred by (1) denying his motions to suppress physical evidence and certain statements, (2) applying the wrong burden of proof and (3) denying his post-trial motion for a new trial based on newly discovered evidence and his post-trial motion to amend his plea to assert an insanity defense. Because we conclude that the Superior Court committed no error, we affirm the judgment.

## I. Facts and Procedure

The trial court would have been warranted in finding the following facts. On October 4, 1984 Glenner met Amelia Cave at his trailer residence in Hancock, Maine. At this meeting Glenner obtained a check from Cave drawn on the Bangor Savings Bank, payable in cash for twenty-seven hundred dollars ($2,700.00). Glenner described the check as a loan from Amelia Cave for repair of his boat.

On October 9, 1984 Glenner presented the check for deposit to Beth Sargent, a teller at a branch office of the bank in Ellsworth. At about the same time, certain friends and neighbors of Cave reported to the Hancock County Sheriff's Office that Cave was missing. Soon thereafter, Beth Sargent, after hearing of Cave's disappearance in the news and linking Glenner to Cave's check, reported her transaction with Glenner to the Sheriff's Department. Later investigation by a handwriting analyst revealed that the signature on the check was a forgery.

Based on Sargent's information, the Maine State Police telephoned Glenner on October 11, 1984 and requested an interview with him for the following day. During the course of the call, Glenner agreed to the request and arranged to be picked up by an officer in the late morning of

October 12th. Lieutenant Anderson picked up Glenner and his mother and transported them in an unmarked car to the Hancock County Sheriff's Office. Anderson used no threats or intimidation to persuade Glenner and his mother to come with him. At the sheriff's office Glenner's mother was interviewed first while Glenner waited in the lobby. Glenner was then questioned for approximately one hour by Sergeant Pinkham, of the Maine State Police, with two other law enforcement officers present. At the time of the questioning Amelia Cave was considered only a missing person, no body having as yet been discovered. Glenner was not threatened or coerced at the interview.

During the interview Glenner freely answered several general questions posed by Sergeant Pinkham regarding his work and former domiciles. Glenner also stated that he had seen Amelia Cave for the last time on Thursday, October 4, 1984, the day Cave allegedly gave him the check for $2,700 to repair his boat.

Following the interviews with Glenner and his mother, the State conducted a search along the shoreline area where Glenner kept his boat, an area approximately one mile from Glenner's mobile home and his parents' residence. During the course of this search, the State located a conspicuous area of disturbed soil between the shoreline and boat, adjacent to a partially constructed rock wall. Based on this information the officers obtained a warrant to search the shoreline. After digging into the area, the officers uncovered a body later identified as Amelia Cave. An autopsy revealed that death was caused by asphyxiation.

On November 5, 1984 Glenner was indicted by the Hancock County Grand Jury on one count of murder. Following a jury-waived trial Glenner was convicted. Subsequent to the court's finding of guilt, but before sentencing, Glenner filed several post-trial motions based on alleged newly discovered evidence relating to Glenner's mental state prior to the murder. All motions were denied by the Superior Court.

## II. Motions to Suppress

■ Before trial Glenner moved to suppress certain statements made to police officers on the ground that they were the product of custodial interrogation obtained without compliance with the requirements of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Glenner points to numerous facts he claims preclude a finding that he was not in custody. We need not reexamine the standard for determining the existence of custody recently discussed in *State v. Gardner*, 509 A.2d 1160 (Me.1986). It is sufficient to state that the record under review supports a conclusion that Glenner's freedom of action was not curtailed "to a degree associated with formal arrest". *Berkemer v. McCarthy*, 468 U.S. 420, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984) *quoted in Gardner*, 509 A.2d at 1163. As a result, the motion justice properly declined to suppress the statements in question.[1]

Glenner also sought to suppress the observations made and physical evidence obtained by the police as a result of the warrantless inspection and subsequent search executed pursuant to a warrant directed at a shoreline area approximately one mile from Glenner's trailer and his parents' house. He alleges that his personal use of this area to the exclusion of his parents precludes them from granting a valid consent and that his own consent contained limitations violated by the officers. The illegal warrantless search, he contends, contaminates the subsequent search warrant.

■ We recognize that the trial court rejected the State's claim that the area was not within fourth amendment protection. No cross-appeal is necessary in these cir-

1. Because the question is raised for the first time on appeal, we decline to address Glenner's argument that the statements should have been suppressed on the ground of an alleged statutory violation by the State.

cumstances, however, to enable us to review that ruling. The State is free to argue any ground in favor of the trial court's ultimate ruling that has support in the evidence. We conclude that the evidence as to distance of the searched area from the two dwellings as well as the nature of the area in question compels a finding that the area searched was an "open field" requiring no fourth amendment protection. *Oliver v. United States,* 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984).

### III. Burden of Proof

Citing the trial court's discussion of circumstantial evidence, Glenner argues that the justice improperly shifted the burden of proof. Specifically, the justice observed that the State must produce circumstantial evidence supporting an inference of guilt beyond a reasonable doubt and that "there exists no alternative explanation ... in evaluating the evidence that raises any reasonable doubt as to the defendant's guilt". Glenner describes this standard as the "now-discredited negative hypothesis exclusion" and contends that it suggests a need on the part of the defendant to produce an alternative explanation.

■ We first observe that the phrases "there exists" and "evaluating the evidence" are entirely neutral as far as suggesting any shift in the burden of proof. Second, we note that the "negative exclusion" standard has not been discredited as a demonstration of the State's burden of proof. Rather, its use in connection with jury instructions on circumstantial evidence is discouraged because it implies that some lesser standard applies to direct evidence. *See State v. LeClair,* 425 A.2d 182, 184

(Me.1981). The standard of proof beyond a reasonable doubt requires that the fact-finder must necessarily have a reasonable doubt if he entertains, as reasonable, any factual hypothesis inconsistent with guilt. As a consequence, we reject Glenner's claim that the court applied an improper standard of proof.

### IV. New Trial

■ Following his conviction, Glenner moved for a new trial on the ground of newly discovered evidence pursuant to M.R.Crim.P. 33. The motion was supported only by an affidavit of counsel stating that after trial Glenner's ex-wife had revealed to defense counsel that Glenner suffered from periods of violent behavior during their marriage. Counsel asserts that this information casts in a new light the pretrial psychological reports. We conclude, however, that the record amply supports the trial court's conclusion that the defendant's motion was deficient in at least two respects. Glenner had not established that the new evidence would probably change the result. Moreover, Glenner's failure to understand the significance of facts known to him prior to trial does not render the evidence newly discovered. *State v. Lund,* 266 A.2d 869, 877 (Me.1970).

### V. Motion to Amend Plea

As an alternative post-trial procedure Glenner sought permission to plead not guilty by reason of insanity so that further trial could be had on the issue of criminal responsibility, pursuant to 17–A M.R.S.A. §§ 39–40.[2] He supported his motion with the same affidavit of counsel submitted in support of the motion for a new trial. Glenner argues on appeal that the denial of

2. 17–A M.R.S.A. § 40 provides in part:
   1. When the defendant enters a plea of not guilty together with a plea of not guilty by reason of insanity, he shall also elect whether the trial shall be in 2 stages as provided for in this section, or a unitary trial in which both the issues of guilt and of insanity are submitted simultaneously to the jury....
   2. If a 2–stage trial is elected by the defendant, there shall be a separation of the issue of guilt

from the issue of insanity in the following manner.
   A. The issue of guilt shall be tried first and the issue of insanity shall be tried only if the jury returns a verdict of guilty. If the jury returns a verdict of not guilty, the proceedings shall terminate.
   ....
   5. This section does not apply to cases tried before the court without a jury.

his motion (1) constituted an abuse of discretion, and (2) that Section 40 explicitly approves the use of a two-stage trial on the issues of guilt and insanity at the election of the defendant.

■ By its express terms, Section 40 does not apply to the case before us. Section 40 provides that a defendant can elect either a unitary or bifurcated trial when his not guilty plea is joined with an insanity plea *and* the issue of guilt is being tried by jury. The election becomes a matter of right and not subject to the discretion of the court. If the issue of guilt is to be tried jury-waived, however, the question of bifurcation is left to the discretion of the court. *Cf. State v. Armstrong,* 344 A.2d 42, 54 (Me.1975) (pre-code determination that M.R.Crim.P. 57(a) permits bifurcation within the discretion of the trial judge).

■ A defendant cannot preempt the discretion of the court by withholding an insanity plea for tactical reasons until after a finding of guilt. Glenner asserts that the plea was not withheld for tactical reasons. Rather, he claims that the newly discovered information disclosed a potential insanity defense only after trial. In these circumstances the trial court was justified in considering in the first instance whether the information was in fact newly discovered. Because the trial court properly determined that it was not newly discovered, we conclude that the denial of Glenner's motion to add an insanity plea was within the court's discretion.

### VI. Sufficiency of Evidence

■ Finally, Glenner contends that the evidence was insufficient to support his conviction of the murder of Amelia Cave. Glenner points to three specific findings of the trial court that he claims are not supported by the evidence. Initially, we observe that the specific findings are indeed rational inferences to be drawn from the evidence. Moreover, the record contains ample evidence of the defendant's guilt without consideration of the three specific inferences. In short, our review of the

entire record reveals no reversible error on the part of the trial court.

The entry is:

Judgment affirmed.

All concurring.