The STATE of Ohio, Appellee,

v.

SCOTT, Appellant.

[Cite as *State v. Scott* (2001), 146 Ohio App.3d 233.]

Court of Appeals of Ohio,
Fifth District, Richland County.

No. 96 CA 35.

Decided Oct. 2, 2001.

*John Randolph Spon, Jr.,* Richland County Assistant Prosecuting Attorney, for appellee.

*John C. O'Donnell,* for appellant.

---

JOHN W. WISE, Judge.

Appellant John W. Scott appeals the judgment of the Richland County Court of Common Pleas that denied his motion to suppress. Appellant also claims that the trial court erred when it permitted a magistrate to hear the motion to suppress and that he received ineffective assistance of trial counsel. The following facts give rise to this appeal.

While on probation for another offense, appellant's probation officer, Danielle Hoover, asked appellant to appear at her office two or three days before their regularly scheduled appointment. Upon appellant's arrival at Hoover's office, Sergeant McBride of the Richland County Sheriff's Department was present and informed appellant that he wanted to discuss some allegations of sexual abuse his biological daughter had made to the authorities. Sergeant McBride did not read appellant his *Miranda* rights. After approximately fifteen minutes of discussion about the allegations, appellant stated that he had some involvement with his daughter but that it was not his doing.

At that point, Sergeant McBride began recording the interview and read appellant his *Miranda* rights. During the interview, appellant admitted having sexual relations with his daughter. On January 12, 1996, the Richland County Grand Jury indicted appellant on five counts of sexual battery. Each count contained a specification that appellant had previously been convicted of an offense of violence. Appellant entered a plea of not guilty on January 23, 1996. Thereafter, defense counsel moved to suppress the statement appellant made to Sergeant McBride. A magistrate conducted a hearing on the motion to suppress on March 5, 1996. The magistrate overruled appellant's motion on March 13, 1996.

The case proceeded to trial on March 28, 1996. Following deliberations, the jury found appellant guilty of all counts contained in the indictment. The trial court sentenced appellant to five consecutive three-to-ten-year sentences and ordered the sentences to be served consecutive to the sentence for which he was on probation.

Appellant timely filed a notice of appeal. In the appeal, appellant challenged the magistrate hearing the motion to suppress. However, as noted in our decision overruling this assignment of error, appellant failed to include, in the record, "the *nun pro tunc* entry to which appellant assigns error, a Magistrate's report on the motion to suppress, a transcript of a suppression hearing before the Magistrate, or an objection to the Magistrate's report." *State v. Scott* (Mar. 5, 1997), Richland App. No. 96–CA–35, unreported, at 2, 1997 WL 117078.

On August 10, 2000, we granted appellant's motion to reopen his appeal. Appellant sets forth the following assignments of error for our consideration:

"I. The trial court committed prejudicial error by allowing defendant/appellant's statement into evidence in violation of the Fifth and Sixth Amendments to the United States Constitution.

"II. It was plain error for a magistrate to hear and decide defendant/appellants' motion to suppress.

"III. Defendant/appellant was denied effective assistance of counsel by failing to object to the magistrate's lack of authority and to file objections to the magistrate's order."

I

Appellant contends, in his first assignment of error, that the trial court erred when it allowed the statement he made to Sergeant McBride into evidence. We disagree.

In overruling appellant's motion to suppress, the magistrate made the following findings. First, the magistrate found that Sergeant McBride did not detain appellant and that there was nothing inherently coercive in the environment to objectively suggest detention. Magistrate's Order, March 13, 1996, at 3. The magistrate explained that appellant was not in custody, because there was no formal arrest and no restraint of movement to the degree associated with formal arrest. *Id.* The magistrate also noted that the obligation to appear and answer a probation officer's questions does not create custody. See *Minnesota v. Murphy* (1984), 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409.

Second, the magistrate concluded that appellant understood the *Miranda* warnings and knowingly and voluntarily gave an uncounseled statement to Sergeant McBride despite the *Miranda* warnings. *Id.* Finally, the magistrate found that there was no evidence that appellant asserted his right to counsel, requiring Sergeant McBride to stop the questioning of appellant. *Id.*

Appellant does not challenge the magistrate's findings of fact. Appellant also does not allege that the magistrate failed to apply the appropriate test or

correct law to the findings of fact. Instead, appellant claims that the magistrate incorrectly decided the ultimate issue raised in his motion to suppress. When reviewing this type of claim, we must independently determine, without deference to the magistrate's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; and *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726.

■ Appellant maintains, in his first assignment of error, that his statement to Sergeant McBride was the result of a police interrogation in a coercive atmosphere, without the benefit of *Miranda* warnings. Appellant also claims that he was in custody when Sergeant McBride questioned him. In response to this argument, the state contends that a probation officer has the right to ask questions of a probationer about other possible criminal conduct. The state also maintains that appellant was not in custody when the questioning occurred and that no signs of coercion were present during the questioning.

■ We start our analysis of this assignment of error by stating the basic premise that a duty to administer *Miranda* warnings arises only when an accused is taken into custody. *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. For purposes of *Miranda* warnings, "custody" is defined as a formal arrest or restraint on the freedom of movement to the degree associated with a formal arrest. *State v. Mason* (1998), 82 Ohio St.3d 144, 154, 694 N.E.2d 932. In order to determine whether a person was in custody, the court should apply a totality-of-circumstances test, including where the interrogation occurred, whether the investigation had focused on the subject, whether the objective indicia of arrest were present, and the length of the questioning involved. *Stansbury v. California* (1994), 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293.

■■ The trial court must determine how a reasonable person in the accused's position would have perceived the situation. *Berkemer v. McCarty* (1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317. The United States Supreme Court has recognized that custodial interrogation is not limited to a police stationhouse interrogation. See *Mathis v. United States* (1968), 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (questioning of defendant by an agent from the Internal Revenue Service while defendant was incarcerated), and *Orozco v. Texas* (1969), 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (questioning of defendant, by the police, in defendant's bedroom). Also, Fifth Amendment protection is not limited to any single source of official interrogation. Where a defendant is subject to the inherently compelling pressures of a custodial situation, he is

entitled to warning before any official interrogation. *Estelle v. Smith* (1981), 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359.

■ In the *Estelle* case, a court-appointed psychiatrist questioned the defendant to determine whether he was competent to stand trial in a capital murder case. *Id.* at 456–457, 101 S.Ct. 1866, 68 L.Ed.2d 359. Subsequently, during the penalty phase, the prosecution called the psychiatrist to testify about the defendant's likelihood to reoffend. *Id.* at 458, 101 S.Ct. 1866, 68 L.Ed.2d 359. The psychiatrist testified that the defendant was likely to reoffend based upon statements the defendant made to him. *Id.* at 459–460, 101 S.Ct. 1866, 68 L.Ed.2d 359. The psychiatrist based his conclusions on the ninety-minute interview he conducted to determine whether the defendant was competent to stand trial. *Id.* at 460, 101 S.Ct. 1866, 68 L.Ed.2d 359. At no time during the interview did the psychiatrist provide the defendant with *Miranda* warnings. On appeal to the United States Supreme Court, the court stated:

"In *Miranda v. Arizona*, 384 U.S. 436, 467 [86 S.Ct. 1602, 16 L.Ed.2d 694], * * * the Court acknowledged that 'the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves.' *Miranda* held that 'the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.' *Id.* at 444 [86 S.Ct. 1602, 16 L.Ed.2d 694] * * *. Thus, absent other fully effective procedures, a person in custody must receive certain warnings before any official interrogation, including that he has a 'right to remain silent' and that 'anything said can and will be used against the individual in court.' *Id.*, at 467–469 [86 S.Ct. 1602, 16 L.Ed.2d 694] * * *." *Estelle* at 466–467, 101 S.Ct. 1866, 68 L.Ed.2d 359.

Thus, " * * * the availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites." *In re Gault* (1967), 387 U.S. 1, 49, 87 S.Ct. 1428, 18 L.Ed.2d 527.

Sergeant McBride did not conduct a police stationhouse interview. Instead, Sergeant McBride contacted appellant's probation officer, informed her of the allegations against appellant, and asked her if she would arrange a meeting so he could talk to appellant about the allegations. The transcript of appellant's statement to Sergeant McBride indicates that at this meeting, only Sergeant McBride conducted the questioning. Appellant's probation officer, Danielle Hoover, did not ask any questions of appellant. Thus, we find the facts of this case distinguishable from those presented in *Minnesota v. Murphy, supra.*

The *Murphy* case involved a probation officer's questioning a probationer at the probation officer's office about other crimes the probationer allegedly committed. *Murphy* at 423, 104 S.Ct. 1136, 79 L.Ed.2d 409. The probation officer did not provide the probationer with *Miranda* warnings. The probationer admitted, during the questioning, that he committed the crimes. *Id.* at 424, 104 S.Ct. 1136, 79 L.Ed.2d 409. Following his indictment for these crimes, the probationer sought to suppress the statements he made to his probation officer. *Id.* at 425, 104 S.Ct. 1136, 79 L.Ed.2d 409. On appeal to the United States Supreme Court, the court made the following conclusions. First, the court held:

"[T]he general obligation to appear and answer questions truthfully did not itself convert Murphy's otherwise voluntary statements into compelled ones * * * [because] [t]he answers of such a witness to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." *Id.* at 427, 104 S.Ct. 1136, 79 L.Ed.2d 409.

Second, the court addressed the Fifth Amendment privilege and how it may be waived. The court stated:

"[A] witness confronted with questions that the government should reasonably expect to elicit incriminating evidence ordinarily must assert the privilege rather than answer if he desires not to incriminate himself. * * * But if he chooses to answer, his choice is considered to be voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so." *Id.* at 429, 104 S.Ct. 1136, 79 L.Ed.2d 409.

Third, the court explained exceptions to the general requirement of a timely assertion of the Fifth Amendment privilege. In compelled incriminations, some identifiable factor denied an individual a free choice to admit, to deny, or to refuse to answer. One such situation is where a confession is obtained from a suspect in police custody. *Id.* at 429, 104 S.Ct. 1136, 79 L.Ed.2d 409. Another situation occurs where the assertion of the privilege is penalized so as to "foreclos[e] a free choice to remain silent, and * * * compe[l] * * * incriminating testimony.'" *Id.* at 434, 104 S.Ct. 1136, 79 L.Ed.2d 409. Finally, a situation in the context of the federal occupational and excise taxes on gamblers. *Id.* at 439, 104 S.Ct. 1136, 79 L.Ed.2d 409. "In recognition of the pervasive criminal regulation of gambling activities and the fact that claiming the privilege in lieu of filing a return would tend to incriminate, the Court has held that the privilege may be exercised by failing to file." (Citations omitted.) *Id.*

Finally, the court concluded that the probationer's statements to his probation officer were not compelled and, therefore, should not have been suppressed because none of the three exceptions outlined above applied. *Id.* at 441, 104 S.Ct. 1136, 79 L.Ed.2d 409. Thus, the probationer had to timely assert his Fifth

Amendment privilege. The probationer was not in police custody when the questioning occurred. Nor did this situation involve excise taxes on gamblers. The court also concluded that a reasonably perceived threat of revocation of probation does not render the Fifth Amendment privilege self-executing. The court explained:

"The legal compulsion to attend the meeting with the probation officer and to answer truthfully the questions of the officer who anticipated incriminating answers is indistinguishable from that felt by any witness who is required to appear and give testimony, and is insufficient to excuse respondent's failure to exercise the privilege in a timely manner." *Id.* at 421, 104 S.Ct. 1136, 79 L.Ed.2d 409.

However, "[i]f the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." *Id.* at 435, 104 S.Ct. 1136, 79 L.Ed.2d 409.

As in *Murphy,* although appellant in the case *sub judice* had a legal compulsion to attend the meeting with his probation officer, there is no evidence in the record that the state, either expressly or impliedly, asserted that invocation of the Fifth Amendment privilege would lead to revocation of his probation.

Thus, the only issue left for us to determine is whether appellant was in custody during Sergeant McBride's questioning. As noted above, we must review certain factors to determine whether a person was in custody. The questioning in this case occurred at his probation officer's office. Appellant appeared several days earlier than his regularly scheduled appointment. Appellant was familiar with his probation officer's office because he had been there on more than one occasion to talk to his probation officer. Clearly, the investigation had focused on appellant because Sergeant McBride was investigating the validity of the allegations made by appellant's daughter.

The record indicates no objective indicia of arrest present during the interview by Sergeant McBride. In fact, Sergeant McBride told appellant that he was not under arrest and that he would be leaving the probation officer's office following the conclusion of the interview. Also, there is no indication in the record that appellant's freedom was in any way restrained. Finally, it appears from the record that Sergeant McBride questioned appellant less than half an hour before he began taping appellant's statement. Appellant's taped statement took between an hour and one and one-half hours.

We conclude that appellant cannot establish that he was in custody when Sergeant McBride questioned him about the allegations made by his daughter.

Appellant was not formally arrested nor was there any restraint on his freedom of movement of the degree associated with a formal arrest. Thus, since appellant was not in custody, he was not entitled to *Miranda* warnings. The magistrate properly denied his motion to suppress.

Appellant's first assignment of error is overruled.

## II

In his second assignment of error, appellant contends that it was plain error for the magistrate to hear and decide his motion to suppress. We agree that Crim.R. 19 does not permit a magistrate to hear a motion to suppress. However, by failing to object to the magistrate's hearing the motion to suppress, appellant has waived this error.

On May 20, 1996, after the magistrate conducted a hearing on appellant's motion and denied it, the trial court, pursuant to Crim.R. 19(A) and (B) and Civ.R. 53(A), appointed the magistrate to address "all arraignments, motions to suppress, proceedings in aid of execution (including, without limitation, all hearings on attachments and debtor's exams) assigned to these judges and heard on or before March 1, 1996 are hereby referred to him [the magistrate] for resolution."

Appellant claims that it was plain error or the magistrate to hear and decide his motion to suppress. Crim.R. 52(B) addresses plain error and provides:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

We do not find, nor have other jurisdictions found, that a magistrate improperly hearing and deciding a motion to suppress rises to the level of plain error. Crim.R. 19 addresses magistrates and their powers and duties. Crim.R. 19(C)(1)(f) specifically addresses the motions a magistrate may hear. This portion of the rule provides:

"(f) Motions. A magistrate may hear and decide motions in referred cases as follows:

"(i) Any pretrial or post-judgment motion in any misdemeanor case for which imprisonment is not a possible penalty.

"(ii) Upon the unanimous consent of the parties in writing or on the record in open court, any pretrial or post-judgment motion in any misdemeanor case for which imprisonment is a possible penalty."

Clearly, appellant's motion to suppress does not fit either of these categories, since appellant's charges involved felonies. Thus, it was improper for the magistrate to hear and decide appellant's motion to suppress. Other appellate

courts throughout the state have reached the same conclusion. See *Eastlake v. Taylor* (Dec. 29, 2000), Lake App. No. 99–L–161, unreported, 2001 WL 20740; *State v. Koziol* (Aug. 29, 1997), Lake App. No. 96–L–193, unreported, 1997 WL 585913; *State v. Smith* (1996), 112 Ohio App.3d 413, 678 N.E.2d 1006; *State v. Brown* (Apr. 24, 1996), Wayne App. No. 95CA0047, unreported, 1996 WL 199543; and *State v. Chagaris* (1995), 107 Ohio App.3d 551, 669 N.E.2d 92.

We note that in the case of *State v. Milteer* (Oct. 1, 1991), Richland App. No. CA–2830, unreported, 1991 WL 241942, this court previously found that a trial court did not err when it appointed a magistrate to hear a motion to suppress in a felony case. Based upon our reading of Crim.R. 19 and case law from other jurisdictions, we find our previous decision, in the *Milteer* case, to be in error. Thus, we overrule our previous decision in *Milteer* and hold that Crim.R. 19 does not permit a magistrate to hear and decide a motion to suppress in a felony case.

Although the magistrate clearly did not have the authority to address appellant's motion to suppress, appellant had to preserve this issue for appeal by either objecting when the trial court initially referred the matter to the magistrate or by filing written objections after the issuance of the magistrate's order pursuant to Crim.R. 19(E)(2). *Koziol* at 3. The record indicates that appellant took neither action and, therefore, waived this error. Further, because we do not find that this error affected a substantial right, it does not rise to the level of plain error under Crim.R. 52(B).

Appellant's second assignment of error is overruled.

### III

In his third assignment of error, appellant contends that he was prejudiced by the ineffectiveness of defense counsel. We disagree.

Specifically, appellant claims that he was prejudiced by defense counsel's failure to object to the magistrate's hearing and deciding the motion to suppress and failure to file objections to the magistrate's order to preserve this issue for appeal.

A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley* at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. *Id.* In order to warrant a reversal, the appellant must additionally show that he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, citing *Lockhart v. Fretwell* (1993), 506 U.S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180.

The United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674. Appellant directs our attention to the prejudice prong of the *Strickland* test. Under the prejudice prong, we do not find that the result of the trial was unreliable or the proceeding fundamentally unfair. Even though the magistrate did not have the authority to address appellant's motion to suppress, we concluded in the first assignment of error that the magistrate did not err when it denied said motion. Thus, appellant was not prejudiced by defense counsel's failure to object to the magistrate's hearing the motion to suppress.

Appellant's third assignment of error is overruled.

For the foregoing reason, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.

*Judgment affirmed.*

EDWARDS, P.J., and WILLIAM B. HOFFMAN, J., concur.