OPINION
{¶ 1} Defendant-appellant Levorn C. Donald appeals the November 30, 2001 Judgment Entry of the Stark County Court of Common Pleas sentencing him for his conviction on one count of sexual battery. Appellant also appeals the November 5, 2001 Judgment Entry which overruled his motion to suppress. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On September 10, 2001, the Stark County Grand Jury indicted appellant with one count of rape, in violation of R.C. 2907.02(A)(2), and one count of sexual battery, in violation of R.C. 2907.03(A)(2). Appellant pled not guilty to the charges.
 {¶ 3} At the time of the incident, appellant performed contracting work for Home Depot. Crystal Smith, the victim, was a cashier at Home Depot. Ms. Smith had been an employee with Home Depot for approximately 2 ½ years. Ms. Smith became familiar with appellant who came through her checkout line almost every day. Although she always refused, appellant continued to ask Ms. Smith out for over one year. Ms. Smith refused because she was dating someone else.
 {¶ 4} On January 3, 2001, when appellant came through Ms. Smith's checkout line, Ms. Smith told appellant she was having arguments with her boyfriend. Appellant asked Ms. Smith to dinner and she accepted. However, Ms. Smith told appellant they were going out only as "friends." Tr. at 102-103.
 {¶ 5} The date was scheduled for 6:00 p.m. that evening. Appellant arrived at Ms. Smith's home in Massillon at approximately 8:00 p.m. She asked appellant to come in and meet her daughter and her daughter's finance, Derek Deikman, but appellant did not want to do this. Eventually, appellant acquiesced and came to the door to meet the couple. Ms. Smith claimed appellant was not very happy about the couple being there. As they left the house, Ms. Smith told appellant they were going to dinner as friends.
 {¶ 6} On the way to the restaurant, Ms. Smith told appellant she suffered from bipolar disorder, and had been on medication for six years. Ms. Smith explained as a result of this medication, she could have no more than two beers.
 {¶ 7} At the restaurant, Appellant ordered a margarita for each of them and an appetizer. After drinking approximately half of her margarita, Ms. Smith started to feel the effects of the alcohol. Appellant ordered another appetizer and another margarita for himself. Because Ms. Smith continued to feel more and more ill, she told appellant she wanted to go home. Appellant finished his drink and got a box for the food. When the two went outside, Ms. Smith was having trouble walking. She testified that appellant grabbed her and began kissing her on the sidewalk. Their waiter came outside because they had forgotten the boxed food and broke up the kiss. The two left in appellant's vehicle and went back to Smith's home.
 {¶ 8} When they arrived at her home, Ms. Smith testified appellant took her out of the car and carried her into the house. He asked her if she wanted him to put her to bed and she agreed, thinking appellant would simply carry her to her bed. Ms. Smith testified she went in and out of consciousness. She passed out, but when she awoke, appellant was unbuttoning her sweater as she lay on her bed.
 {¶ 9} Ms. Smith next woke up sick, in the bathroom. Appellant was with her. She threw-up into the toilet and appellant flushed the toilet. She then smelled her watermelon scented hand soap and felt a burning sensation in her vagina. She realized appellant was putting soap in her vagina. She testified she felt awful, almost paralyzed, and could say nothing.
 {¶ 10} Appellant took Ms. Smith back to the bedroom and she kept falling down as appellant tried to push her onto the bed. She passed out again and then awoke. Ms. Smith testified when she awoke, appellant was on top of her, having sexual intercourse with her. She passed out again.
 {¶ 11} Ms. Smith testified she next awoke at about 3:00 a.m. She found herself on the end of her bed, naked and disoriented. She grabbed her robe and ran to her daughter's home, four doors down. Her daughter found her hysterically screaming and repeating that she had been raped by appellant. Ms. Smith's daughter and her finance, Mr. Deikman, spent the night at Ms. Smith's residence because she was scared.
 {¶ 12} The next morning, between 7:00 and 7:15 a.m., appellant called Ms. Smith. Ms. Smith confronted appellant and told him he had raped her. Mr. Deikman also spoke to appellant, and testified appellant kept asking how Ms. Smith was doing. Appellant told Mr. Deikman he had used a washcloth in the bathroom to clean up Ms. Smith's vomit.
 {¶ 13} Three days later, Ms. Smith contacted the police and went to the emergency room. She testified she waited to go to the emergency room because she feared repercussions from appellant.
 {¶ 14} At the hospital, Nurse Donna Sells administered the sexual assault nurse exam. Ms. Sells noticed a one centimeter area of redness on Ms. Smith's right inner thigh area and a two centimeter bruise on her right forearm. Ms. Smith also had tenderness and redness on her inner labia. Nurse Sells took swabs and other evidence for the rape kit and turned the kit over to Det. Grizzard of the Massillon Police Department. Ms. Smith provided her clothes and the washcloth to Det. Gizzard as well.
 {¶ 15} Michelle Foster of the Stark County Crime Lab, reviewed the evidence. She found no evidence of semen or spermatozoa from the swabs collected. However, she found two pubic hairs on the washcloth. After obtaining samples, Ms. Foster determined one hair matched Ms. Smith's sample, and the other matched appellant's sample. Ms. Foster indicated the washcloth did not contain traces of vomit.
 {¶ 16} On January 15, 2001, Det. Grizzard, recorded a conversation between Ms. Smith and appellant without appellant's knowledge. During the conversation, appellant adamantly denied anything happened between Ms. Smith and himself.
 {¶ 17} The following day, Det. Gizzard interviewed appellant after reading appellant his Miranda rights. Appellant indicated he and Ms. Smith engaged in an intense kiss on the way out of the restaurant. When they got to Massillon, Ms. Smith was acting like something was wrong and appeared to be intoxicated. Appellant told Det. Gizzard the two kissed again and then he helped Ms. Smith to the bathroom where she vomited. Appellant claimed he put Ms. Smith to bed and then called at 8:00 a.m. the next day to see if she was okay.
 {¶ 18} Det. Gizzard told appellant Ms. Smith had been to the hospital and that medical personnel had found semen inside of her. Appellant then indicated at one point during the evening both he and Smith were naked. Appellant claimed he did not reveal this fact because he was scared. Appellant claimed Ms. Smith took her own clothes off and that at some point his fingers were inside her. Further, he admitted his penis had touched her vagina, but he denied having intercourse with her. Appellant did not testify at trial.
 {¶ 19} Prior to trial, appellant filed a motion to suppress the use of statements he had given to Det. Grizzard. After receiving briefs on the issue and conducting a hearing, the trial court overruled appellant's motion to suppress.
 {¶ 20} After hearing all evidence and being instructed on the law, the jury was unable to reach a verdict on the rape count. Accordingly, the trial court declared a mistrial as to that count. However, the jury found appellant guilty of sexual battery. The trial court accepted the guilty verdict, and in a November 30, 2001 Judgment Entry, the trial court sentenced appellant to a determinate term of four years for the sexual battery. Appellant now appeals from the November 5, 2001 Judgment Entry which denied his motion to suppress and from the November 30, 2001 Judgment Entry sentencing him for sexual battery. Appellant assigns the following errors for our review:
 {¶ 21} "I. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS FOR THE REASON THAT APPELLANT'S STATEMENT WAS NOT GIVEN FREELY AND VOLUNTARILY AND THUS OBTAINED IN VIOLATION OF APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS.
 {¶ 22} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO INSTRUCT THE JURY PURSUANT TO THE APPELLANT'S REQUEST TO ELIMINATE ANY REFERENCE REGARDING THE DEFENDANT'S FAILURE TO TESTIFY.
 {¶ 23} "III. THE COURT COMMITTED PREJUDICIAL ERROR WHEN IT SENTENCED APPELLANT TO A FOUR YEAR PRISON TERM.
 {¶ 24} "IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BY FINDING APPELLANT GUILTY OF SEXUAL BATTERY, AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE, WHERE THE STATE FAILED TO OFFER SUFFICIENT EVIDENCE TO PROVE EACH AND EVERY ELEMENT OF THE CHARGED OFFENSE BEYOND A REASONABLE DOUBT."
 I {¶ 25} In appellant's first assignment of error, he maintains the trial court erred in denying his motion to suppress. Specifically, appellant contends his statements were not freely and voluntarily obtained and therefore were in violation of his federal and state constitutional rights. We disagree.
 {¶ 26} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning
(1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 114; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172;State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; andState v. Guysinger, supra. As the United States Supreme Court held inOrnelas v. U.S. (1996), 517 U.S. 690 116 S.Ct. 1657, 134 L.E2d 911" . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 27} Appellant contends any statements he made to Det. Grizzard during the interrogation were not voluntary. At the time of the interview, appellant was on parole after serving seven years for a felony committed in Texas. Instead of contacting appellant directly, Det. Grizzard asked appellant's parole officer to set up the meeting. After a scheduled parole meeting, appellant's parole officer told him there was someone who wanted to ask him some questions. The parole officer stayed for the interview.
 {¶ 28} Appellant argues he could not have voluntarily, knowingly, and intelligently waived his Miranda rights because the totality of the circumstances created a situation where he could not voluntarily waive his rights.
 {¶ 29} In State v. Edwards, the Ohio Supreme Court set forth the totality of the circumstances test for reviewing Miranda claims. The Court held: "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Edwards (1976),49 Ohio St.2d 31, *31, par. 2 of syllabus, vacated in part on other grounds, Edwards v. Ohio (1978), 438 U.S. 911, 98 S.Ct. 3147,57 L.Ed.2d 1155. "A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct. (Colorado v.Spring [1987], 479 U.S. 564, 574, 107 S.Ct. 851, 857-58, 93 L.Ed.2d 954
followed.)" State v. Dailey (1990), 53 Ohio St.3d 88, par.2 of syllabus.
 {¶ 30} Appellant claims incriminating statements he made were involuntary because of his need to cooperate with the police to satisfy his parole officer. However, we agree with appellee, the mere presence of appellant's parole officer at the meeting did not make his confession involuntarily. See State v. Scott (2001), 146 Ohio App.3d 233.
 {¶ 31} In the matter sub judice, appellant was not compelled to attend the meeting with Det. Grizzard. After his normal meeting with his parole officer, his parole officer told appellant Det. Grizzard wanted to speak to him. Appellant was immediately told he was free to go. Appellant's parole officer did not threaten to revoke his probation if he did not cooperate. While we understand appellant may have had fear about his parole officer's actions if he had chosen not to cooperate, such fear is insufficient to excuse his failure to exercise his rights. Further, we note appellant was given his Miranda warnings. Based upon the totality of the facts and circumstances, we find appellant's statements were voluntarily. Appellant was fully advised of his rights and voluntarily chose to speak with Det. Grizzard.
 {¶ 32} Appellant's first assignment of error is overruled.
 II {¶ 33} In his second assignment of error, appellant maintains the trial court abused its discretion in failing to eliminate a standard jury instruction regarding appellant's failure to testify. In the matter sub judice, appellant did not testify on his own behalf. The standard jury instructions include an instruction advising the jury a defendant's failure to testify cannot be considered for any purpose. However, appellant felt this instruction would draw attention to the fact he did not testify on his own behalf. Appellant argues although he had a right to have this instruction given, he chose to waive that right. Upon such a waiver, the trial court should not have given the instruction. We disagree.
 {¶ 34} It is within the trial court's discretion, given the facts of any particular case, to instruct the jury. State v. Wolons (1989),44 Ohio St.3d 64. An abuse of discretion involves more than mere error of law or judgment. It implies the trial court acted unreasonably, arbitrarily, or unconscionably. State v. Adams (1980), 62 Ohio St.2d 151. The instruction was a proper statement of the law and acted to protect the defendant.
 {¶ 35} Appellant provides legal support for the proposition that when a defendant requests an instruction regarding his or her right not to testify, the trial court must provide such an instruction to the jury. Appellant did not, however, provide any support for the converse of this proposition, to wit, the trial court must not so instruct the jury when the defendant requests it not do so. We can find no abuse of discretion in the trial court's decision to give the jury the instruction. That is not to say we would necessarily have found an abuse of discretion had the trial court honored appellant's request not to give the instruction.[1]
 {¶ 36} Appellant's second assignment of error is overruled.
 III {¶ 37} In appellant's third assignment of error, he maintains the trial court erred in sentencing him to a four year prison term. Essentially, appellant maintains the trial court punished him for going to trial. Before trial, the State offered to recommend a two year prison term in exchange for appellant's guilty plea. Appellant turned down the offer. After trial, the trial court imposed a four year sentence. Appellant maintains he was cooperative at every stage of the criminal investigation, and therefore was not deserving of the four year prison term.
 {¶ 38} R.C. 2953.08 governs an appeal of sentence for felony. Subsection (G)(2) states:
 {¶ 39} "The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court. The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
 {¶ 40} "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (E)(4) of section 2929.14, or division (H) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
 {¶ 41} "(b) That the sentence is otherwise contrary to law."
 {¶ 42} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus.
 {¶ 43} Appellant was convicted of sexual battery, a felony of the third degree. R.C. 2929.14(A)(3) permits a trial court to impose a prison term of one, two, three, four, or five years upon conviction for such an offense. At the sentencing hearing, the trial court noted appellant's previous record.
 {¶ 44} In 1975, appellant was convicted of aggravated robbery. Appellant was paroled for this offense in 1977. While on parole, appellant was found guilty of one count of trafficking and placed on probation. In 1986, appellant was convicted of forgery and received probation. In 1988, appellant was convicted of two counts of credit card abuse, one count of robbery, and one count of aggravated robbery with a deadly weapon specification. Appellant was sentenced and served seven years on those convictions. Appellant was paroled in February of 1992. While on parole, appellant committed the underlying offense. The trial court also noted the seriousness of the offense and found the imposition of the minimum sentence would demean the seriousness of the offense and not adequately protect the public. Further, the trial court's sentencing entry noted the trial court had balanced the seriousness and recidivism factors under R.C. 2929.12 and had considered the principles and purposes of sentencing pursuant to R.C. 2929.11. As noted above, the trial court's sentence was within the range provided by the sentencing statutes. Accordingly, we find no error in the trial court's decision to sentence appellant to four years incarceration for this offense.
 {¶ 45} Appellant's third assignment of error is overruled.
 IV {¶ 46} In appellant's fourth assignment of error, he maintains his conviction was against the sufficiency and the manifest weight of the evidence. We disagree.
 {¶ 47} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 48} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, syllabus 1, 227 N.E.2d 212.
 {¶ 49} Sexual battery is defined in R.C. 2907.03(A) as follows:
 {¶ 50} "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * * * (2) The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."
 {¶ 51} Appellant maintains there was insufficient evidence to prove beyond a reasonable doubt appellant knew Ms. Smith's ability to appraise the nature of the situation or to control her conduct. Appellant argues the evidence at trial demonstrated appellant was aware only that Ms. Smith suffered from bipolar disorder and could not consume more than two drinks. Because appellant saw Ms. Smith consume only drink, appellant argues he could still reasonably believe Ms. Smith was in control of her faculties.
 {¶ 52} Ms. Smith testified she did not want to engage in sexual conduct with appellant. The sexual battery statute does not require the intoxication of the victim, rather the victim must have been impaired or unable to appraise the situation. Ms. Smith testified she certainly felt the effects of the drink she consumed. In fact, appellant told Det. Grizzard Ms. Smith was acting as if she was intoxicated. Appellant had to carry Ms. Smith into her home. Ms. Smith testified she came in and out of consciousness, passing out and waking up throughout the commission of this crime.
 {¶ 53} When viewed in a light most favorable to the State, we find sufficient evidence to indicate Ms. Smith's abilities were impaired. Further, we cannot find the jury lost its way so as to create a manifest injustice in reaching such a conclusion. Accordingly, appellant's fourth assignment of error is overruled.
 {¶ 54} The November 30, 2001 Judgment Entry of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, P.J. Farmer, J. and Edwards, J. concur.
topic: no error in denial of suppression; tc not required to omit appropriate instruction; sentencing; sufficiency and manifest weight.
[1] We envision such scenarios might well give rise to an ineffective assistance of counsel claim.