ENTERED DEC 3 0 2014

STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CR-13-1074
MMM-KEN-12-05-14

STATE OF MAINE

v.

**ORDER ON DEFENDANT'S MOTION
TO SUPPRESS**

JUSTIN PILLSBURY

Before the Court is a Motion to Suppress Statements Made to Law Enforcement filed by the Defendant on March 12, 2014. Defendant is alleged to have intentionally or knowingly caused the death of Jillian Jones on November 13, 2013 in Augusta. The State is represented in this matter by Assistant Attorney General Deborah Cashman, and the Defendant is represented by Attorney James Lawley. The Court conducted a hearing on the motion on September 16, 2014 and the parties submitted written arguments, the last of which was received by the Court on October 17, 2014.

The Court has considered the evidence admitted at hearing (including the recordings of the Defendant's interviews), the parties' written arguments, the case law referred to in the parties' memoranda, and issues the following order denying the motion.

### Findings and Conclusions

On November 13, 2013 members of the Augusta Police Department (APD), including Detective Tory Tracy, responded to a 911 call which reported a "murder-suicide" on Crosby Street. The body of Jillian Jones was found in a bathroom of the apartment, and the Defendant, who was found unresponsive, was quickly transported by first responders to Maine General Medical Center (MGMC). Upon learning that the Defendant had made statements to rescue personnel, Detective Tracy went to the hospital and took statements from rescue and medical providers, but she did not interview the Defendant. [1] Det. Tracy entered the recovery room with other APD officers when the Defendant was waking up from surgery, and did so at the request of medical staff who

---

[1] The statements made by the Defendant to rescue and medical personnel are not the subject of this motion, and the Court was not told what the Defendant said to them.

1

were apparently concerned about the Defendant being combative as he awoke. Det. Tracy testified that she never took a statement from the Defendant about the death of Jillian Jones, and it appears that the Defendant was not interviewed by anyone else from law enforcement until the next day.[2]

On November 14, 2013 Detective Tremblay of the Maine State Police, accompanied by Detective Jonah O'Roak, went to MGMC to interview the Defendant at around noon. Det. Tremblay testified that when they arrived, they asked a critical care nurse to ask the Defendant if they could speak with him. She advised that he would, and also that she had permission to tell them what medication he was on. Det. Tremblay testified that the Defendant was lying in a hospital bed when they entered his room, and had a cast on his hand as well as a bandage on his neck. He testified that they did not ask him any questions about the event, but did ask about his level of pain. Detective Tremblay conceded on cross examination that he never asked the nurse about the medication.

The officers were in plain clothes. Although they were armed, the evidence is that their weapons were not visible under their suit jackets. Det. Tremblay also administered *Miranda* warnings. He testified that the Defendant was not in custody, and can be heard on the tape in this interview telling the Defendant he was not in custody. Det. Tremblay explained that he administered the warnings because he wanted to make sure that the Defendant knew he had rights and understood them. He described the Defendant as being in pain, but noted that his answers to questions were responsive. The interview ended shortly after it began as the Defendant soon invoked his rights, telling the officers "no sir" when he was asked if he was willing to answer questions. The Defendant also stated that he understood that he could "have a lawyer sitting here with me present. Which is probably what I'm gonna do." Detective Tremblay told the Defendant that if he changed his mind about talking to them, "give me, um, ask the, ah, a nurse and she can get a hold of us." The Defendant responded, "Maybe, like tomorrow or something. I'm finding it (inaudible), trying to talk right now."[3] (State's Exh. 2, pg. 5).

The next day, Detectives Tremblay and O'Roak returned to MGMC. They did not do this because the Defendant had taken them up on the offer to reach out to law enforcement through a nurse. It is clear to the Court that they returned in order to try to discuss Jillian Jones' death with the Defendant, as they had been unsuccessful in doing so the previous day. This next interview took place approximately 26 hours after the first interview. It lasted approximately one and a half hours, and a transcript of this interview was admitted as State's Exh. 3. In the course of this second interview, the Defendant makes numerous inculpatory statements after once again receiving *Miranda* warnings.

The Defendant was not told this time, however, by either detective that he was not in custody. Nor was he told by law enforcement that they learned in the course of this interview that he had been medically cleared once the paper work was completed by medical staff, and the record does not indicate whether the Defendant knew this from any

---

[2] It is also uncontested that no law enforcement officer "stood guard" over the Defendant while he was at MGMC. Hospital security personnel were located near and outside his room during the second interview on November 15, 2013, but there is no evidence that they did this at the behest of law enforcement.

[3] The State admitted without objection a disc (State's Exh. 1) which recorded the November 14, 2013 interview as well as the interview of the Defendant that took place the next day. The Court agrees that the best evidence of the interviews is the disc, but will cite to the transcripts of the interviews that were also admitted by agreement as State's Exhibits 2 and 3.

other source. The Defendant early in the interview indicates he understands that a hospital security guard was stationed just outside his door.

At one point, approximately 25 minutes into the interview, the Defendant asks to go off the record, and Detective Tremblay turns off the recording. When the recording comes back on, the detective states for the recording what had been discussed, which he suggests were inquiries from the Defendant "about whether or not, ah, a deal could be made and not go to trial." (State's Exh. 2). There seems to be no claim made by the defense that any promises or inducements were made by law enforcement when they went off the recording.

Towards the end of the interview (Id. pg. 40) Detective Tremblay steps out of the room for approximately 15 minutes to take a call from the Attorney General's Office. Detective O'Roak continues questioning the Defendant and then receives a call from his "boss." Detective Tremblay testified that when he stepped out to speak to the AG's Office he learned the Defendant was going to be medically realeased, and that he was told by the AG's Office that he could arrest the Defendant. Within minutes of returning to the room, the interview ends and the Defendant is informed that he is medically cleared and is under arrest.

The Defendant argues in this motion that first, all statements in the second interview must be suppressed given the Defendant's invocation of his rights in the first interview. Secondly, the Defendant argues that any inculpatory statements made in the second interview were not the product of a valid waiver of his constitutional rights.

### The Defendant's Invocations of Rights in the November 14, 2013 Interview

A threshold question is whether the Defendant was in "custody" during these two interviews. While it is clear that he received appropriate *Miranda* warnings on both occasions, if Defendant is correct that he was in custody on both occasions, and invoked his right to counsel in the first, the United States Supreme Court's decision in *Maryland v. Shatzer* 559 U.S. 98 (2010) would prohibit the use of any inculpatory statements made in the second interview conducted on November 15, 2013. However, if Defendant was not in custody during the first interview, then *Shatzer's* fourteen-day waiting period in between custodial interrogations does not apply. *State v. Nightingale,* 2012 ME 132, ¶19.

The Court will assume for the sake of this analysis that the Defendant in the first interview invoked his right to counsel.[4] The Court must then decide if the circumstances of the first interview constituted custody which requires "a formal arrest or restraint on freedom of movement of the degree associated with formal arrest." *Shatzer* at 112, citing *New York v. Quarles,* 467 U.S. 649, 655 (1984). The Maine Supreme Court has adopted a non-exhaustive list of ten factors which courts are instructed to use in making the objective determination of whether a defendant is in custody for these purposes. This list is as follows:

    1) the locale where the defendant made the statement;

---

[4] Arguably, Defendant's statement to Detective Tremblay on November 14, 2013 that he "probably" was going to want to have an attorney present before answering questions indicated only that he was leaning toward invocation. Det. Tremblay, however, honored the Defendant's right to not answer any questions, and the Court finds that Det. Tremblay was also honoring what he took to be an invocation of the right to counsel. In addition, the Court concludes that the detectives did in fact scrupulously honor the Defendant's invocations as they understood them.

2) the party who initiated the contact;
3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);
4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would effect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);
7) whether the suspect was questioned in familiar surroundings;
8) the number of law enforcement officers present;
9) the degree of physical restraint placed upon the suspect; and
10) the duration and character of the interrogation.

*State v. Bryant,* 2014 ME 94 ¶10.

In addition, because the Defendant was hospitalized, the Court must consider that factor as well. In *State v. Lowe,* 2013 ME 92, the Maine Supreme Court noted that courts overwhelmingly have held that voluntarily hospitalized patients are not in custody by virtue of the hospitalization. Id. at ¶17. The Law Court indicated that a determination that a hospitalized person is in custody requires more than that the person is a focus of the investigation. Id. at ¶18. In *Lowe,* the Law Court affirmed a determination that the hospitalized defendant was in custody for purposes of *Miranda* given the trial court's reliance upon the *Bryant* factors above, together with the fact that after a break in the interrogation the officer returned with sufficient information to justify consideration of Lowe as a suspect, along with a change in the character of the interrogation which became "more focused, aggressive, and insistent." Id. at P19.

Of the 10 factors above, the Court would find that factors 2, 6, and 7 would weigh in favor of a finding of custody. Clearly, the police initiated the interview. Any reasonable person in the Defendant's position would likely perceive that he was the focus of the investigation, and he was not questioned in familiar surroundings. However, all of the other non-exhaustive factors weigh against such a finding. In the first interview the officers did not communicate to the Defendant much of anything regarding the existence or non-existence of probable cause to arrest him; the interview did not get that far. The Court would make that same observation with respect to factors 4 and 5 as well. Only two law enforcement officers were present, no physical restraints were placed by them upon the defendant, and the interview was short and non-confrontational.

In addition, the factors which tipped the scales in favor of a finding of custody in *Lowe* were absent here. It cannot be said that anything the officers did or said to the Defendant in this interview was aggressive or insistent. Therefore, given the weight of authority noted by the Law Court in cases where a Defendant is voluntarily hospitalized, and the absence of *"Lowe"* factors, the Court cannot find that the fact that the Defendant was in the hospital weighs in favor of a finding of custody.

The Court will therefore reject the Defendant's first argument, as it finds that he was not in custody during the November 14, 2013 interview.

### • *Whether Assuming Miranda Warnings Were Required in the Second Interview, the Defendant's Waiver of his Rights was Knowing, Intelligent and Voluntary*

The Court will assume for the sake of argument that circumstances had sufficiently changed between the first and second interview for *Miranda* warnings to be required. They were, of course, given to the Defendant by law enforcement in both interviews. The Defendant seems to argue that notwithstanding the administration of warnings, he did not adequately waive his rights. The Court disagrees.

A review of the colloquy between Detective Tremblay and the Defendant on November 15, 2013 indicates that the warnings were thoroughly administered, and the Defendant, who reported "yeah" when asked if he was feeling better than he did during the first interview, is heard to say that he understood his rights. The Court would note further that the day before when they were administered, the Defendant also stated he understood them, and the Court has previously noted that he invoked his rights. And when the Defendant in the second interview qualifies his answer to Detective Tremblay, stating that he would answer "some" questions, Detective Tremblay appropriately follows up with the question, "So you understand you can stop at any time, right?" The Defendant then answers in the affirmative. (Transcript, Nov. 15 interview, pg. 3).

In addition, the Court finds from the taped interview that the Defendant, while emotional from time to time, had sufficient control of his faculties and thought processes such that he was capable of waiving these rights.

The Court concludes that the State has proven by a preponderance of evidence that the Defendant's waiver of his *Miranda* rights on November 15, 2013 was knowing, voluntary and intelligent. *State v. Lockhart,* 2003 ME 168; *State v. McCluskie,* 611 A.2d 975 (Me. 1992).

The entry will be: Defendant's Motion to Suppress Statements is DENIED.

| 12/5/14 | |
|---|---|
| **DATE** | **SUPERIOR COURT JUSTICE** |

DOB: 01/13/1975
Attorney: JAMES LAWLEY                      State's Attorney: DEBORAH CASHMAN
          LIPMAN & KATZ PA
          227 WATER STREET
          PO BOX 1051
          AUGUSTA ME 04332-1051
          RETAINED 11/18/2013

Filing Document: CRIMINAL COMPLAINT              Major Case Type: HOMICIDE
Filing Date: 11/18/2013

## Charge(s)

1   MURDER                                      11/13/2013 AUGUSTA
Seq 621   17-A  201(1)(A)              Class M
    TREMBLAY               / MSP


## Docket Events:

11/18/2013 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 11/18/2013

11/18/2013 Party(s):  JUSTIN E PILLSBURY
           ATTORNEY -  RETAINED ENTERED ON 11/18/2013

           Attorney:  JAMES LAWLEY
11/19/2013 Charge(s): 1
           HEARING -  INITIAL APPEARANCE HELD ON 11/18/2013 at 10:30 a.m.
           M MICHAELA MURPHY , JUSTICE
           Attorney:  JAMES LAWLEY
           DA:  WILLIAM STOKES
           Defendant Present in Court
11/19/2013 Charge(s): 1
           PLEA -  NO ANSWER ENTERED BY DEFENDANT ON 11/18/2013

11/19/2013 BAIL BOND -  NO BAIL ALLOWED SET BY COURT ON 11/18/2013
           M MICHAELA MURPHY , JUSTICE
11/19/2013 BAIL BOND -  NO BAIL ALLOWED COMMITMENT ISSUED ON 11/18/2013

11/19/2013 HEARING -  HARNISH BAIL HEARING SCHEDULED FOR 11/22/2013 at 09:00 a.m.
           M MICHAELA MURPHY , JUSTICE
11/19/2013 HEARING -  HARNISH BAIL HEARING NOTICE SENT ON 11/19/2013

11/21/2013 Party(s):  STATE OF MAINE
           ATTORNEY -  RETAINED ENTERED ON 11/21/2013

           Attorney:  DEBORAH CASHMAN
11/21/2013 HEARING -  HARNISH BAIL HEARING WAIVED ON 11/21/2013

           Attorney:  JAMES LAWLEY

DEFENDANT WAIVES RIGHT TO HARNISH HEARING
11/21/2013 LETTER -  FROM PARTY FILED ON 11/21/2013


Attorney:  JAMES LAWLEY
DEFENDANT WAIVES RIGHT TO HARNISH HEARING                                    11/21/13
APPROVED BY JUSTICE MURPHY
12/16/2013 ORDER -  SPECIAL ASSIGNMENT ENTERED ON 11/18/2013
M MICHAELA MURPHY , JUSTICE
01/27/2014 Charge(s): 1
SUPPLEMENTAL FILING -  INDICTMENT FILED ON 01/24/2014


01/28/2014 Charge(s): 1
HEARING -  ARRAIGNMENT SCHEDULED FOR 02/05/2014 at 08:30 a.m.


01/29/2014 Charge(s): 1
HEARING -  ARRAIGNMENT NOTICE SENT ON 01/29/2014


02/05/2014 HEARING -  MOTION IN LIMINE, RULE 17 SCHEDULED FOR 03/24/2014 at 08:30 a.m.


02/06/2014 Charge(s): 1
HEARING -  ARRAIGNMENT HELD ON 02/05/2014
M MICHAELA MURPHY , JUSTICE
Attorney:  JAMES LAWLEY
DA:  DEBORAH CASHMAN
Defendant Present in Court


READING WAIVED.  DEFENDANT INFORMED OF CHARGES.  COPY OF INDICTMENT/INFORMATION GIVEN TO
DEFENDANT.  21 DAYS TO FILE MOTIONS                    TAPE#1820, INDEX#5589-5741
02/06/2014 Charge(s): 1
PLEA -  NOT GUILTY ENTERED BY DEFENDANT ON 02/05/2014


02/06/2014 MOTION -  MOTION FOR DISCOVERY FILED BY STATE ON 02/05/2014


03/11/2014 MOTION -  MOTION IN LIMINE, RULE 17 FILED BY STATE ON 03/05/2014


03/12/2014 MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT ON 03/12/2014


03/18/2014 OTHER FILING -  OTHER DOCUMENT FILED ON 03/14/2014


Attorney:  JAMES LAWLEY
DEFENDANT'S OBJECTION TO STATE'S MOTION TO SUBPOENA THE DEFENDANT'S MEDICAL RECORDS
03/18/2014 MOTION -  MOTION TO QUASH SUBPOENA FILED BY DEFENDANT ON 03/14/2014


03/18/2014 MOTION -  MOTION TO SUPPRESS FILED BY DEFENDANT ON 03/14/2014


Attorney:  JAMES LAWLEY
OR EXCLUDE DEFENDANT'S MEDICAL RECORDS
03/19/2014 HEARING -  MOTION TO QUASH SUBPOENA SCHEDULED FOR 03/24/2014 at 08:30 a.m.


NOTICE  TO PARTIES/COUNSEL
03/24/2014 HEARING -  MOTION IN LIMINE, RULE 17 HELD ON 03/24/2014
THOMAS D WARREN , JUSTICE
Attorney:  JAMES LAWLEY

DA: DEBORAH CASHMAN          Reporter: TAMMY DROUIN
Defendant Present in Court


RECORDS TO BE PROVIDED TO COURT AND REVIEWED BY JUSTICE MURPHY IN CAMERA
03/24/2014 HEARING - MOTION TO QUASH SUBPOENA CONTINUED ON 03/24/2014


MAY BE HEARD AFTER RECORDS ARE REVIEWED IN CAMERA
03/24/2014 MOTION - MOTION IN LIMINE, RULE 17 GRANTED ON 03/24/2014
          THOMAS D WARREN , JUSTICE
          RECORDS TO BE TURNED OVER TO THE COURT FOR IN CAMERA REVIEW
03/24/2014 MOTION - MOTION IN LIMINE, RULE 17 FILED BY STATE ON 03/24/2014


          DA: DEBORAH CASHMAN
          AMENDED MOTION IN LIMINE
03/31/2014 OTHER FILING - OTHER DOCUMENT FILED ON 03/31/2014


          MEMORANDUM IN SUPPORT OF STATE'S MOTION IN LIMINE PURSUANT TO MRCP 18 FOR  MEDICAL RECORDS
04/01/2014 MOTION - MOTION IN LIMINE, RULE 17 GRANTED ON 03/31/2014
          M MICHAELA MURPHY , JUSTICE
          OVER DEF'S OBJECTION THE RECORD RECEIVED AND REVIEWED IN CAMERA BY THE COURT HIS DATE
          SHALL BE MADE AVAILABLE FOR COPING AND REVIEWED BY THE PARTIES.  HOWEVER THEY MAY NOT BE
          DISSEMINATED OR OTHERWISE USED WITHOUT FURTHER    ORDER OF COURT.  COPY MAILED TO ATTY
          LAWLEY AND AAG CASHMAN ON 4/1/14.
06/13/2014 ORDER - COURT ORDER FILED ON 06/06/2014
          M MICHAELA MURPHY , JUSTICE
          SCHEDULING ORDER: THE COURT MET WITH COUNSEL IN CHAMBERS.  THIS DATE TO SET THE ORDER OF
          PROCEEDINGS.  BOTH PARTIES HAVE UNTIL 8/1/14 TO PROVIDE ANY EXPERT REPORTS AND IDENTIFYING
          INFORMATION AND TO FILE ANY MOTIONS.  HEARING ON ALL PENDING MOTIONS WILL BE SEPT. 11,
          2014 AT 8:30                    COPY SENT TO PARTIES
06/18/2014 HEARING - OTHER MOTION SCHEDULED FOR 09/11/2014 at 08:30 a.m.
          M MICHAELA MURPHY , JUSTICE
          ALL PENDING MOTIONS
07/31/2014 MOTION - OTHER MOTION FILED BY DEFENDANT ON 07/30/2014


          AGEED MOTION TO ENLARGE DEADLINE.
08/09/2014 MOTION - OTHER MOTION GRANTED ON 08/08/2014
          M MICHAELA MURPHY , JUSTICE
          AGEED MOTION TO ENLARGE DEADLINE.
08/09/2014 HEARING - OTHER MOTION NOTICE SENT ON 08/08/2014


          ALL PENDING MOTIONS
08/13/2014 HEARING - OTHER MOTION CONTINUED ON 08/13/2014


          ALL PENDING MOTIONS
08/13/2014 HEARING - OTHER MOTION SCHEDULED FOR 09/16/2014 at 08:30 a.m.
          M MICHAELA MURPHY , JUSTICE
          ALL PENDING MOTIONS
08/14/2014 OTHER FILING - OTHER DOCUMENT FILED ON 08/13/2014


          DEFENDANT'S OBJECTION TO STATE'S MOTION TO ENLARGE
08/14/2014 MOTION - OTHER MOTION FILED BY STATE ON 08/14/2014


          DA: DEBORAH CASHMAN

MOTION TO PERMIT TAKING OF DEFENDANT'S FINGER AND PALM PRINTS
08/16/2014 MOTION - MOTION FOR EXTENSION OF TIME FILED BY STATE ON 08/12/2014


08/21/2014 MOTION - MOTION FOR EXTENSION OF TIME GRANTED ON 08/18/2014
        DANIEL I BILLINGS , JUSTICE
        COPY TO PARTIES/COUNSEL                                    ALL REPORTS TO
        BE FILED BY 9/1/14 WITH THE EXCEPTION OF DET HERBERT     LEIGHTON'S REPORT WHICH IS DUE
        10/1/14. ALL DEFENSE EXPERT REPORTS IN     RESPONSE TO STATE'S EXPERT REPORTS ARE DUE BY
        12/1/14.
09/16/2014 HEARING - MOTION TO SUPPRESS STATEMENT HELD ON 09/16/2014 at 08:30 a.m.
        M MICHAELA MURPHY , JUSTICE
        Attorney: JAMES LAWLEY
        DA: DEBORAH CASHMAN          Reporter: TIMOTHY THOMPSON
        Defendant Present in Court
09/16/2014 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 09/16/2014
        M MICHAELA MURPHY , JUSTICE
        STATE'S MEMO DUE 9/30/14 AND DEFENSE MEMO DUE 10/14/14, STATE'S REBUTTAL 10/21/14
09/17/2014 MOTION - OTHER MOTION GRANTED ON 09/16/2014
        M MICHAELA MURPHY , JUSTICE
        MOTION TO PERMIT TAKING OF DEFENDANT'S FINGER AND PALM PRINTS        GRANTED DURING
        PHONE CONFERENCE, PER J. MURPHY
09/17/2014 HEARING - OTHER MOTION HELD ON 09/16/2014
        M MICHAELA MURPHY , JUSTICE
        Attorney: JAMES LAWLEY
        DA: DEBORAH CASHMAN          Reporter: TIMOTHY THOMPSON
        Defendant Present in Court


        ALL PENDING MOTIONS
09/17/2014 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 09/16/2014
        M MICHAELA MURPHY , JUSTICE
10/02/2014 OTHER FILING - OTHER DOCUMENT FILED ON 10/02/2014


        STATES MEMORANDUM IN OPPOSITION TO DEF'S MOTION TO SUPPRESS.
10/18/2014 OTHER FILING - MEMORANDUM OF LAW FILED ON 10/17/2014


        Attorney: JAMES LAWLEY
        DEFENDANT'S MEMORANDUM IN RESPONSE TO THE STATE'S OPPOSITION TO THE DEFENDANT'S MOTION TO
        SUPPRESS
10/29/2014 OTHER FILING - MEMORANDUM OF LAW FILED ON 10/27/2014


        DA: DEBORAH CASHMAN
        STATE'S REPLY MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS
12/08/2014 MOTION - MOTION TO SUPPRESS DENIED ON 12/05/2014
        M MICHAELA MURPHY , JUSTICE
        COPY TO PARTIES/COUNSEL
12/08/2014 ORDER - COURT ORDER FILED ON 12/05/2014
        M MICHAELA MURPHY , JUSTICE
        ORDER ON DEFENDANT'S MOTION TO SUPPRESS: THE COURT CONCLUDES THAT THE STATE HAS PROVEN BY
        A PREPONDERANCE OF EVIDENCE THAT THE DEFENDANT'S WAIVER OF HIS MIRANDA RIGHTS ON NOVEMBER
        15, 2013 WAS KNOWING, VOLUNTARY AND INTELLIGENT. STATE VS. LOCKHART, 2003 ME 168; STATE
        VS. MCCLUSKIE, 611 A.2D 975 (ME.1992).
12/08/2014 MOTION - MOTION TO SUPPRESS DENIED ON 12/05/2014
        M MICHAELA MURPHY , JUSTICE

COPY TO PARTIES/COUNSEL

A TRUE COPY
ATTEST: _____
                        Clerk