STATE OF MAINE                          UNIFIED COURT
KENNEBEC, SS.                           Criminal
                                        Docket No. CR-2016-1617


STATE OF MAINE              )
                            )
                            )
                            )
                            )
        v.                  )           **ORDER ON MOTION TO SUPPRESS**
                            )
                            )
                            )
ASHER GIFFORD,              )
        Defendant.          )


       This matter comes before the court on the Defendant's Motion to Suppress all evidence obtained as a result of a search of his residence located at 368 Bog Road, Albion, Maine that occurred on June 20, 2016 and all statements that he made as a result of an interrogation that occurred on that same day. An evidentiary hearing was held over parts of two days on May 18, 2017 and June 21, 2017. Any findings of fact in this order are based on the evidence presented at that hearing.

### Search

       The search at issue in this matter was conducted pursuant to an appropriately issued warrant supported by probable cause. The search warrant described the place to be searched as:

Property/Premises to be searched:
1. The premise to be searched, 368 Bog Rd. in the town of Albion, County of Kennebec, Maine. The Premises are described as a trailer with white vinyl siding and black shutters. The attached image was taken by Det Bosco of the Maine State Police Computer Crimes Unit on or around June 7, 2016.
2. Any vehicles at the residence belonging to or under control of any residents of 368 Bog Rd. Albion, Maine 04910.
3. Any outbuildings with the residence at 368 Bog Rd. Albion, Maine 04910.

       When law enforcement officers executed the warrant, they entered the trailer with white vinyl siding and black shutters and found that the trailer was basically empty. It did not appear that anyone was residing in the trailer and no evidence was obtained from inside the trailer.

       The officers also found on the premise a camper that was set up on jack stands on a pad. The camper was connected to utilities including water, electricity, gas, and

1

telephone/internet. The officers searched the camper and discovered the contraband that the Defendant seeks to have suppressed in his motion.

Also located on the premise on June 20, 2016 was an older singlewide mobile home that officers believed was not then being used as a residence. There were also two stick-built structures on the premises – a small garage and a larger outbuilding. No evidence was seized from these structures. All of the structures on the property, including the camper, can be seen from the public road.

The Defendant argues that because the warrant described "a trailer with white vinyl siding and black shutters" and the camper was effectively a second residence on the premises not specifically described, the camper was not covered by the warrant. In effect, the Defendant argues that the warrant was limited to "a trailer with white vinyl siding and black shutters" and any associated vehicles or outbuildings.

As the Law Court has said, "when a defendant moves to suppress evidence alleging that the State has exceeded its authority pursuant to the Fourth Amendment, the burden of articulating facts sufficient to demonstrate the possible illegality of the search or seizure rests with the defendant." State v. Reynoso-Hemandez, 2003 ME 19, ¶ 6, 816 A.2d 826, 829 (citing State v. Desjardins, 401 A.2d 165, 169 (Me. 1979)).

The validity of a search warrant depends on whether it is supported by probable cause – not an issue in this case – and whether the warrant contains a description of the property to be searched that is sufficiently specific so as to enable the officers executing the warrant to understand the precise scope of the search authorized. "A warrant must describe the property to be seized with such particularity that an executing officer will be able to identify it 'with certainty." State v. Pelletier, 673 A.2d 1327, 1329 (quoting State v. Sweatt, 427 A.2d 940, 949 (Me. 1981)).

In this case, the description of the place to be searched as "[t]he premises . . . 368 Bog Rd. in the town of Albion, County of Kennebec, Maine" is sufficient to enable the officers executing the warrant to understand the precise scope of the search authorized. Law enforcement was authorized to search the premises at 368 Bog Rd. in the town of Albion, County of Kennebec, Maine and that is exactly what they did.

The description in the warrant of the trailer with white vinyl siding and black shutters did not limit the search to that structure. The Law Court has on at least two occasions held that descriptions of a premise such as that found in the warrant at issue here do not limit the scope of the warrant to the specific structure described. State v. Dignoti, 682 A.2d 666, 671 (Me. 1996) (holding that the applicable warrant did not limit the scope of the search to the mobile home, the detached garage, and persons and vehicles on the premises but included the back yard area and the septic tank located there); State v. Brochu, 237 A.2d 418, 420, 423 (Me. 1967) (seizure of evidence found in detached garage did not exceed scope of warrant authorizing search of "the premises known as the dwelling of Armand A. Brochu located at 20 Forest Street, . . . said premises being owned/occupied by Armand A. Brochu"; inclusion of clause "known as the dwelling of Armand A. Brochu" did not "limit the breadth of 'premises at 20 Forest Street' to the dwelling house proper").

2

## Interrogation

The Defendant also argues that the statements he made to Detective Armstrong on June 20, 2016 should be suppressed because the statements resulted from custodial interrogation that was conducted without the benefit of Miranda warnings. There is no dispute that the Defendant was interrogated and that he was not provided Miranda warnings. The only issue in dispute is whether he was in custody at the time of the interrogation conducted by Detective Armstrong.

Although a person ordinarily must invoke the Fifth Amendment privilege against compelled self-incrimination to receive the benefit of its protections, see Minnesota v. Murphy, 465 U.S. 420, 429, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984), a "[s]tatement[] made by a person subjected to custodial interrogation who is not first given Miranda warnings [is] inadmissible against that person at trial," State v. Nadeau, 2010 ME 71, P 53, 1 A.3d 445; see Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (requiring law enforcement officers to warn individuals about pertinent constitutional rights before conducting a custodial interrogation). Such warnings are "necessary only if a defendant is: (1) in custody; and (2) subject to interrogation." Nadeau, 2010 ME 71, P 53, 1 A.3d 445 (quotation marks omitted).

A court must consider a number of factors to make an objective determination, based on a preponderance of the evidence "that a reasonable person in [the defendant]'s situation would have felt he or she was not at liberty to terminate the interrogation." State v. Lowe, 2013 ME 92, ¶ 14, 81 A.3d 360. The factors to be considered by a court include the following:

(1) the locale where the defendant made the statements;

(2) the party who initiated the contact;

(3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

(4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7) whether the suspect was questioned in familiar surroundings;

(8) the number of law enforcement officers present;

(9) the degree of physical restraint placed upon the suspect; and

3

(10) the duration and character of the interrogation.

Id. at ¶ 16 (footnote omitted) (quotation marks omitted). "The factors must be considered in their totality, not in isolation," Id., and the State bears the burden of proof, see State v. Ormsby, 2013 ME 88, ¶ 11, 81 A.3d 336.

Most of the factors listed above are present in this case and support a conclusion that the Defendant was in custody at the time of the interrogation. The only factors that go against custody are that the interrogation took place in the driveway of the Defendant's home; that there was no physical restraint placed on the defendant; and that the interrogation was fairly brief and the character of the questioning was not oppressive. However, the contact was initiated by law enforcement; there were several law enforcement officers and their vehicles present in the immediate area; the questioning took place in the front seat of a police cruiser; and Detective Armstrong made it clear almost immediately that the Defendant was the subject of the investigation.

However, in considering the factors in their totality, the interrogation was not immediately custodial, but that changed as the discussion continued. In the court's view, the tipping point came when the Defendant expressed his subjective believe that "[t]his is probably going to end up costing me time in jail" and Detective Armstrong replied "at some point in time you're going to have to face the music on this one, too. This is still a crime. . . . it's a felony." At this point in the interview, the existence of probable cause had been communicated to the Defendant and the subjective beliefs communicated by both the Defendant and law enforcement would make a reasonable person in the Defendant's position believe that they were not free to leave.

As a result, everything said by the Defendant after he stated "[t]his is probably going to end up costing me time in jail" is the result of custodial interrogation without the benefit of Miranda warnings. All statements made the Defendant after that point shall be suppressed and may not be admitted against the Defendant at trial.

### Conclusion

For the reasons stated above, the Defendant's Motion to Suppress is GRANTED, in part, and DENIED, in part. The evidence found as a result of the search shall not be suppressed and a portion of the interrogation of the Defendant, as described above, shall be suppressed.

Dated: August 15, 2017

JUSTICE, MAINE SUPERIOR COURT

4